# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

January 11, 2016

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

*In re*: **J.B. & A.B.**

**No. 15-0666** (Mingo County 15-JA-1 & 15-JA-2)

## MEMORANDUM DECISION

Petitioner Mother S.B., by counsel Susan J. Van Zant, appeals the Circuit Court of Mingo County's June 3, 2015, order terminating her parental rights to thirteen-year-old A.B. and ten-year-old J.B. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem for the children ("guardian"), Diana Carter Wiedel, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating her parental rights.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2015, Williamson Police Officer Josh Tincher contacted Child Protective Services ("CPS") and informed them that he received a call that A.B. had been sexually abused. During the investigation, A.B. told a CPS worker that "her father, [H.B] has fondled her since she was nine years old because she hit puberty." Specifically, A.B. told the CPS worker that her father entered her bedroom and "attempted to put his hand on her breast." A.B. further told the CPS worker that on a different occasion her father entered her room while she was asleep and "tried to push his hands up her shorts." As part of the investigation, the CPS worker and Officer Tincher spoke with H.B. After being read his *Miranda*[2] rights, H.B. provided a written statement wherein he admitted that he unlocked A.B.'s bedroom door. H.B. then admitted that he might have touched A.B.'s breast while checking her armpit for a cyst that had ruptured. H.B. further admitted that he might have "pop[p]ed her on the butt moving her away from the front of the

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

[2]*See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1062, 16 L.Ed.2d 694 (1966).

1 -

TV" and "touched her inner thigh or outer thigh when playfully popping her on the leg getting up." Petitioner denied knowledge of any inappropriate touching. In her written statement to Officer Tincher, petitioner stated that she and H.B. went into A.B.'s room which was unlocked, to check her "wound." Petitioner also admitted that she and H.B. "got into it a little" over a Facebook message A.B. showed her wherein H.B. was "talking to another woman." As a result of the inconsistencies in the investigation, the DHHR immediately removed the children from the home and filed a petition for immediate custody of the children.

Several days later, the circuit court held a preliminary hearing during which a CPS worker testified as to inconsistent statements during the underlying investigation. Ultimately, the circuit court found that there was probable cause to remove the children from petitioner's home; that there was "clear and convincing evidence there was something going on with the [A.B.];" and that petitioner failed to protect A.B.

In February of 2015, the circuit court held an adjudicatory hearing and took judicial notice of all prior testimony, findings of fact, and conclusions of law. During the adjudicatory proceeding, petitioner's counsel orally moved for a post-adjudicatory improvement period and proffered that she was participating in visitation, had completed the first part of her psychological examination, and submitted to drug screens. The DHHR objected stating that petitioner is "still together" with H.B. Ultimately, the circuit court found that petitioner "abused and neglected" her children and denied her motion for a post-adjudicatory improvement period so long as she was still in a relationship with H.B.

In April of 2015, the circuit court held its first of several dispositional hearings. During the hearing the guardian proffered to the circuit court that petitioner was still in a relationship with H.B. and that petitioner attempted to pass an "inappropriate letter" to A.B. in her birthday card which pleaded with A.B. to help her restore the family relationship. The guardian also proffered that petitioner's counsel produced a letter allegedly written by A.B. recanting all the information and the allegations in the underlying petition. According to the guardian, A.B. became very upset when asked if she wrote the letter and further denied writing any such letter. The circuit court considered the letter itself child abuse. Ultimately, the circuit court continued the dispositional hearing so that the DHHR could file a family case plan. During the second dispositional hearing, petitioner moved for a continuance based on newly discovered evidence. Petitioner sought additional time in order to produce copies of A.B.'s Facebook postings that allegedly showed inappropriate pictures and documented A.B.'s relationship with a twenty-four-year-old male. Petitioner asserted that the evidence bolsters her position in this case and attacks A.B.'s credibility with regard to her denying that she wrote the letter recanting the allegations of abuse.

The circuit court held its final dispositional hearing in May of 2015, at which time H.B. voluntarily relinquished his parental rights to the children. A CPS worker testified that petitioner received visitation with her children so long as she was not in a relationship with H.B. However, the worker testified that petitioner and H.B. "showed up for visitation or at the Department together." The worker testified that it was in the children's best interests to terminate petitioner's parental rights. Petitioner testified that she separated from H.B. in February of 2015. Petitioner explained that A.B. recently began acting out, drinking alcohol, and smoking cigarettes.

According to petitioner, A.B.'s behavior dramatically changed after she became friends with a neighbor. Ultimately, the circuit court terminated petitioner's parental rights. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). With that standard in mind, we turn to petitioner's assignment of error.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights because she made material improvements during the underlying proceeding and participated in her improvement period. We have explained that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re: B.H. and S.S.*, 233 W.Va. 57, 754 S.E.2d 743 (2014).

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are required to terminate parental rights when there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected in the near future and when necessary for the welfare of the children.[3] West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" Under the circumstances presented in this case, the circuit court did not err in finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and the children's welfare necessitated termination. Despite her argument on appeal that she made material improvements and participated in services, petitioner admits in her brief to this Court that she did not believe the allegations that

---

[3]Because the dispositional hearing in this matter took place on May 27, 2015, seven days after the new version of West Virginia Code §§ 49-1-101 through 49-7-304 went into effect, the Court will apply the revised versions of those statutes on appeal.

A.B. made against H.B. Furthermore, according to the testimony of a CPS worker, petitioner failed to separate from A.B.'s abuser and attempted to coach A.B. to recant her allegations that H.B. sexually abused her. Further, petitioner failed to acknowledge the alleged sexual abuse and instead testified that A.B.'s friend was responsible for A.B.'s recent change in behavior. For these reasons, termination of petitioner's parental rights was not error.

Therefore, we find no error in the decision of the circuit court, and its June 3, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: January 11, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II